## TWIN CITY CO. v. ARMSTRONG et al.

No. 16217—Opinion Filed March 2, 1926.

### Sales—Acceptance of Personal Property—Waiver of Warranty.

Acceptance by a buyer of personal property under an executory contract of sale after a full and fair opportunity of inspection, in the absence of fraud, estops him from thereafter raising any objection as to visible defects and imperfections, whether discovered or not, unless such delivery and acceptance are accompanied by some warranty of quality manifestly intended to survive acceptance. And where the buyer fails and refuses to carry out the terms incumbent upon him, contained in the contemporaneous contract of warranty intended to survive the acceptance entered into at the time of the execution of the same, he is estopped from relying on the warranty contained in the original sales agreement.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by the Twin City Company against Sullivan Armstrong et al. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Thurman S. Hurst, for plaintiff in error.

McCullum & McCullum, for defendants in error.

Opinion by JONES, C. This action was instituted in the district court of Pawnee county, Okla., by plaintiff in error, as plaintiff, against the defendants in error, as defendants, to recover on a certain promissory notes and to foreclose mortgage securing same. The plaintiff alleges that the notes sued upon were given by the defendants to plaintiff for the purchase price of a threshing machine.

The defendants filed their answer and set up as a defense failure of consideration, in that the separator purchased from plaintiff by defendants would not perform the work for which it was purchased, and that the plaintiff failed and refused to make said separator work, according to the terms and conditions set forth in the sale contract, in which it is agreed that the plaintiff, in case the machine failed to work, should furnish a mechanic to put it in good order in a reasonable time, with the assistance of the operator, defendant, and further provided:

"If the machine cannot then be made to fulfill the warranty, the dealer, upon written instructions from the home office of the Twin City Company, will either furnish another

machine with the same above warranty, or, at his option, all cash and notes paid on the purchase price shall be refunded to the purchaser, either of which acts shall constitute a settlement in full of the transaction, and operate as a release of all claims to both purchasers and dealers rising out of this contract."

And defendants aver that the machine failed to do the work for which it was purchased, and that the seller failed and refused to put same in good order. Defendants further aver that a portion of the notes sued on, aggregating $800, given by T. H. Spradlin to the defendant Sullivan Armstrong, and indorsed to the plaintiff, was accepted by plaintiff as part payment of the consideration on the machine in question, and not as collateral security.

The separator in question was purchased for the threshing season of 1922, and was operated for about six weeks, during which time various complaints were made by the operator, appellee here, and the appellant sent out on two different occasions mechanics in an endeavor to adjust and put the machine in proper running order, but their efforts seem to have failed; whether it was the result of lack of skill on the part of the operators, the condition of the grain, or defect in the machine, is a matter of doubt; however, the machine was not operated in a satisfactory manner, and on August 9, 1922, the defendant, Armstrong, notified the appellant by letter that he could not successfully operate the machine, and that he was turning it back to them, and rescinding the contract of sale. Defendants also set up a claim for damages in their answer, by reason of profits lost in the operation of the machine, and for a return of all the notes sued on, and further aver that, in any event, they are entitled to a credit of $800, the value of certain second-hand machinery, alleged to have been turned over to the plaintiff by defendants as part payment of the consideration paid for the new machine, as evidenced by the notes executed by the said T. H. Spradlin.

Upon the trial of the case to the court and jury, a verdict was rendered in favor of the defendants for damages in the sum of $500, and for cancellation of all the notes sued on. Judgment was rendered accordingly by the court, from which the appellant prosecutes this appeal. Various assignments of error are set forth, but we are of the opinion that the plea of estoppel discussed in the third proposition of plaintiff in error's brief is decisive of this case. This contention is based principally on the fact that on September 14, 1922, subsequent to the date of the letter of August 9th, rescinding the contract, the defendant, Armstrong, wrote the following letter to the plaintiff:

"I recently wrote you to the effect that the thresher which I purchased from you was not satisfactory, and that it was on my premises at your disposal. I have changed my mind in regard to it and will assure that I will meet my obligations on the thresher as soon as possible."

This letter seems to have been written by the defendant, Armstrong, at a time when two of the representatives of the plaintiff had called upon him, in an effort to make an adjustment and settlement of the matters here involved, and it is practically agreed that on this occasion there was a verbal agreement entered into by the defendant, Armstrong, and the representatives of the plaintiff, to the effect that the plaintiff would set in order and make the machine do satisfactory work for the threshing season of 1923. This agreement resulted in an extension of the time of payment of all notes then due, and no further action seems to have been taken by either party until about July 1, 1923, when it appears that the plaintiff, pursuant to the oral agreement and adjustment heretofore referred to, sent its representatives to the defendants' home and where the machine was located, for the purpose and with the intention of fulfilling the agreement, and setting the machine in order, and making it do satisfactory work, and the defendant, Armstrong, refused at that time to render any assistance, or to make any attempt to operate the machine, as is disclosed by his own testimony on the trial of the case as follows:

"Q. Did they offer in the spring of 1923 to see if this machine would work properly? A. They come out there. I think, just about threshing time, a couple of them, and they wanted to try the machine out again and go ahead and thresh through the neighborhood there and satisfy the community, and I told them it would be no use as the community was disgusted with it, and I said, 'You had a chance when I was running it, and had the confidence of the neighborhood, and I said that You couldn't do it then, how could you do it now' and that is about the way it was left."

Plaintiff in its reply to the defendants' answer pleaded an estoppel against the right of defendants to rely on the warranty contained in the sale contract, by reason of the acceptance, on the part of the defendant, as disclosed by his letter of September 14th, and this, coupled with his refusal to cooperate with plaintiff in an effort to run the machine, estops defendants from relying on

the oral agreement. We are inclined to the opinion that the court should have sustained the motion for new trial, and that the court was also in error in submitting to the jury the question of whether or not the oral agreement of September 14th was made, because the defendant, Armstrong, admits that it was made, and the witnesses Taylor and Barger, the representatives of the plaintiff, who, pursuant to the agreement, went to the home of the defendant, Armstrong, on two occasions, at the beginning of the threshing season of 1923, for the purpose of setting the machine in order and making it do satisfactory work, testified that Armstrong absolutely refused to carry out the terms of the agreement, or to render any assistance in operating the machine, and there is no conflict of evidence, or contradiction of any kind, on this point, and while the defendant, Armstrong, attempts to make an explanation of why he signed the letter of acceptance of September 14th, to the effect that it was for the purpose of enabling the agent to make a report to the company, and for refusing to assist in the operation of the machine for the threshing season of 1923, it does not constitute a legal excuse or explanation. This view was evidently entertained by the trial court, as the instruction given covering this phase of the case does not submit to the jury or make any reference to the attempted explanation made by the defendant, Armstrong, and no requested instruction was submitted covering this phase of the case. The instruction given is as follows:

"You are instructed that, if, after the defendant discovered that he could not make said machine work satisfactorily, and if such failure was due to the defective construction of the machine, as alleged in the answer, and not to the failure of the defendant to operate said machine, according to instructions and according to the sale contract, the defendant promised the plaintiff that he would pay the purchase price of the machine, if the plaintiff would send an expert the following threshing season and show him how to work said machine, and make said machine fulfill said written warranty, and that the defendant, the following spring, refused to carry out said agreement and refused to make an effort to try said machine out the next spring, and told the plaintiff that he would not keep and pay for said machine, and that the plaintiff offered in good faith to carry out its part of said agreement and to start said machine and make it work well and fulfill said written warranty, then and in that event the defendant is estopped to charge a breach of warranty, and your verdict will be for the plaintiff."

This is a correct statement of the contentions of the parties on this phase of the case.

and had there been any evidence justifying the submission of this question to the jury, we think the instruction given a correct instruction, and had the jury followed this instruction it is obvious that a different verdict would have been returned, because there is a total lack of evidence sustaining the contention of the defendants in this particular, and we think the letter of acceptance, the agreement, and refusal on the part of defendants to co-operate with the agents of the plaintiff in operating the machine, in an effort to make it do satisfactory work, constitute a waiver of defendants' right to rely on the warranty. 10 R. C. L. sec. 113, page 803, announces the rule as follows.

"Acceptance by a buyer of personal property under an executory contract of sale, after a full and fair opportunity of inspection, in the absence of fraud, estops him from thereafter raising any objection, as to visible defects and imperfections, whether discovered or not, unless such delivery and acceptance are accompanied by some warranty of quality manifestly intended to survive acceptance.".

Defendants being estopped from relying upon the warranty leaves no issue except the amount due. We think, under the status of this record, that the question of whether the plaintiff received the notes, given in payment of the old machinery, and accepted by them as part payment, or as collateral security, is one which should be determined by the trial court or jury.

The judgment of the trial court is therefore reversed and remanded for a new trial on the issue of whether or not plaintiff took the notes procured for the old machinery as a part of the consideration for the new machine, or as collateral security, and which goes only to the amount plaintiff is entitled to recover.

By the Court: It is so ordered.